# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LINDA WALKER** | : | **DOCKET NO. 08-401** |
| **VS.** | : | **JUDGE MINALDI** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is Plaintiff's petition for review of the Commissioner's denial of supplemental security income benefits. This matter has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 USC § 636(b)(1)(B).

## BACKGROUND

Plaintiff to this action, Linda Walker, filed an application for disability insurance benefits on September 25, 2001, claiming disability due to headaches, weakness on the left side, a panic disorder, and depression beginning May 1, 1992. Transcript at 76-80, 113-14. Initially her claim was denied and, on her request, a hearing before an Administrative Law Judge (ALJ) was held on September 2, 2003. *Id.* at 400. This hearing resulted in an unfavorable decision for plaintiff on December 22, 2003. *Id.* at 19. She initiated an administrative appeal, and on April 23, 2004, the Appeals Council remanded the case for another hearing.[1] *Id.* at 19, 101-03.

---

[1] Specifically, the Appeals Council assigned to the Administrative Law Judge the following four tasks:
  1. Clarify any inconsistencies regarding the claimant's residual functional capacity and the presence of nonexertional limitations.

On April 23, 2007 a new hearing was held before a different ALJ. Testifying at the hearing were plaintiff, represented by an attorney, a medical expert, and a vocational expert. *Id.* at 19. The ALJ issued a written decision on May 10, 2007 finding plaintiff not disabled within the meaning of the Social Security Act. *Id.* at 19-27.

Plaintiff requested that the Appeals Council review the ALJ's decision and attached a brief in support, but the Appeals Council found no basis for changing the ALJ's decision and denied review on January 25, 2008. *Id.* at 8-10.

Pursuant to 42 U.S.C. § 405(g), plaintiff requested that this court review the decision of the Commissioner to determine if it complies with applicable law and is supported by substantial evidence. This court finds that the decision to comply and that it is supported by substantial evidence.

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

---

2. Give further consideration to the treating source opinions.
3. Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations.
4. If warranted by the expanded record, obtain supplemental evidence from a vocational expert.

Transcript at 19, 101-03.

(quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1421, 28 L. Ed. 2d 842 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## DISCUSSION

The burden of proving that he or she suffers from a disability[2] rests with the claimant. *Perez*, 415 F.3d at 461. The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit." *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

---

[2] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

3

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "'Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.'" *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Id.* at 462 (citing 20 C.F.R. § 404.1520(e)).

Once the claimant has made an appeal, the Appeals Council may decide to grant review, deny review, or dismiss the appeal. "[W]hen the Appeals Council denies a request for review, the

ALJ's decision becomes the Commissioner's final decision." *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).

Here, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act based on the application for supplemental security income filed on September 25, 2001. Specifically, the ALJ found that 1) plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; 2) plaintiff's severe impairments included a depressive disorder, an anxiety disorder, and status post arteriovenous malformation[3]; and 3) plaintiff's impairments do not meet or exceed any listed impairment. Transcript at 21-22. The ALJ concluded that plaintiff's RFC allows her to perform light work in a low stress environment with limited public contact and a sit/stand at will option. *Id.* at 22.

The ALJ next determined that transferability of jobs was not an issue because plaintiff had no past relevant work. *Id.* at 25-26. Based on the assigned RFC along with plaintiff's age, education, and job experience, the ALJ then determined with the aid of a vocational expert that plaintiff could perform a significant number of jobs existing in the national economy. *Id.* at 26. The ALJ relied on the vocational experts testimony that an individual with plaintiff's characteristics could perform the job duties associated with the representative sedentary, unskilled occupations of food and beverage order clerk (300 jobs in Louisiana and 27,000 nationally), office clerk (1,500 jobs in Louisiana and 122,000 nationally), and assembler (5,000 jobs in Louisiana and 500,000 nationally). *Id.*

In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective

---

[3] Plaintiff underwent two gamma knife surgeries to treat an arteriovenous malformation in the right motor cortex region of her brain in 1992 and 1995. Transcript at 23.

evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 461. Before this court, plaintiff argues in sum:

> The ALJ committed an error of law in failing to give proper weight to the opinions of the treating physicians without good cause. This resulted in an RFC assessment that was unsupported by the totality of the medical evidence. As such, the ALJ failed to meet his burden at Step 5.

Doc. 8, at 2.

## I.

Plaintiff asserts that the ALJ failed to give proper consideration to the medical evidence documenting her headaches at step two of the five-step sequential analysis. *Id.* at 4. Plaintiff asserts that "the ALJ's failure to give proper consideration to Mrs. Walker's well-documented headaches at [step two], which could certainly be residuals from the [arteriovenous malformation] and the two . . . surgeries, resulted in the remainder of his Decision being flawed. *Id.* at 4-5.

Whether plaintiff has a severe impairment is the step two consideration in the five-step sequential analysis of a disability claim. *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520). A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)); *see also Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1520, 404.1523. A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled. *Id.*

Plaintiff argues that the medical evidence "clearly supports [her] complaints of persistent, severe headaches." Doc. 8, at 4. In support she cites her application for disability benefits in which she reports that Dr. Robert Marshal prescribed her Lorcet for treatment of headaches and leg and hip pain in September of 2002 [Transcript at 168], the records of Dr. Louis Shirley in 2001 noting diagnosis and treatment for migraine headaches [*Id.* at 170, 173, 176, 178], the records of Dr. Arsham Naalbanian from February 2002 noting plaintiff's main neurological problem was persistent headaches [*Id.* at 186], the 2003 records of Dr. Robert Marshall noting plaintiff suffered from headaches [*Id.* at 235-36, 380-82], and the records of Dr. James McNally in August 2004 noting plaintiff was having headaches three to five times per week [*Id.* at 284].

Taking each of these records in turn, the evidence shows that they represent the plaintiff's subjective complaints, which were treated by the physicians. For example, the diagnosis of "migraine" by Dr. Shirley is based on plaintiff's complaint of continuous headaches. *Id.* at 170, 173, 176, 178. Dr. Naalbandian's history of present illness is also based on plaintiff's self reporting. *Id.* at 186. In his clinical impression, Dr. Naalbanian does not cite medical tests or make conclusions about plaintiff's headaches, except to say in his "Review of Symptoms" that the headaches "possibly are due to her arteriovenous malformation." *Id.* at 186-87. Although Dr. Marshall stated in his clinical findings that plaintiff suffers from severe frontal and occipital

headaches, he notes that no laboratory or diagnostic tests done at the facility support his diagnosis. *Id.* at 236. Finally, it is evident that Dr. McNally's report also relies on plaintiff's own report that she still has headaches three to five times per week. *Id.* at 284. Thus, none of the evidence supplied by plaintiff contravenes the ALJ's observation that plaintiff "*complains of headaches*," but the objective testing—"an MRI performed on July 1, 2004, was normal." *Id.* at 24. With regard to plaintiff's *report* of pain from headaches, the ALJ specifically stated:

> While no doubt the claimant has some pain and discomfort associated with impairments, such symptoms are found to be mild to moderate at most. It is well settled as a matter of law, that the mere fact that working may cause a claimant pain or discomfort does not mandate a finding of total disability. *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980). Thus the claimant's allegations concerning the subjective symptoms are found to be credible to the extent of an inability to perform medium and heavy work, but not credible to the extent that they preclude all work activities.

*Id.* at 25.

As noted in *Epps*, "the 'mere existence of pain is not an automatic ground for obtaining disability benefits' and that the 'factual determination of whether the claimant is able to work despite some pain is within the discretion of the Administrative Law Judge and will be upheld if supported by substantial evidence.'" 624 F.2d at 1274 (quoting *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980)). Substantial evidence supports the ALJ's decision as to the weight given plaintiff's subjective complaints of headaches in light of all the evidence in the record.[4] *Perez*, 415 F.3d at 461; *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

---

[4] It should also be noted that plaintiff reported in 2006 that plaintiff told her doctor at Jeff Davis Family Medicine that Lorcet helped to relieve her pain. Transcript at 275. She averred the same with regard to her pain medication at her hearing and the ALJ noted as much in his Decision. *Id.* at 23, 428. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir. 1987) (citing 20 C.F.R. §§ 404.1530(a), (b) and 416.930(a), (b). Pain constitutes a disabling condition when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Falco v. Shalala*, 27 F.3d 160, 163 (5th

8

**II.**

Plaintiff also argues that the ALJ erred in determining her RFC. Doc. 8, at 5. Plaintiff argues that the ALJ did not consider all the relevant evidence in the record. Specifically, plaintiff urges the court to find that the ALJ improperly discounted the medical opinions of Drs. Marshall and McNally. *Id.* at 5-6. Plaintiff argues that the ALJ moved from legal analysis to diagnosis and substituted his judgment for that of the physician.[5]

It is evident from reviewing the opinion of the ALJ that he made the proper considerations before discounting the opinions of these two doctors. With regard to the opinion of Dr. Marshall, the ALJ properly noted that the opinion of a treating physician that the claimant is disabled "may be rejected if not supported by the objective clinical findings or if it appears to be based on factors other than objective medical evidence." Transcript at 25 (citing *Scott v. Heckler*, 770 F.2d 482 (5th Cir. 1985)). The ALJ noted that Dr. Marshall's opinion is "unsupported by the medical record," that "he offers no support on which to base his statements," and that the opinion in part goes beyond Dr. Marshall's specialty as a family practitioner. *Id.* Moreover, the ALJ noted that the objective medical evidence "significantly contradicts [Dr. Marshall's] examination." *Id.* Taking the evidence as a whole, the ALJ gave "no weight" to the opinion of Dr. Marshall. With regard to the opinion of Dr. McNally, the ALJ similarly noted that his assessment of plaintiff "is not supported by the medical record."

---

Cir. 1994). Plaintiff specifically testified that her pain is responsive to treatment. Thus it does not constitute a disabling impairment.

[5] Plaintiff also argues that the ALJ failed to consider plaintiff's left sided hemiperesis and spasticity. This claim is without basis. During his assessment of plaintiff's RFC, the ALJ specifically found, "The medical record indicates that the claimant does have a mild to moderate left hemiperesis. However, this should not prevent the claimant from performing light work." Transcript at 24. Further, the ALJ noted "The claimant has some left sided weakness but is essentially neurologically normal." *Id.* Plaintiff's response to several reflex tests were normal, and plaintiff's gate was steady, though she favored the left leg and walked with a hyper-extended knee to avoid weaknesses and falls. *Id.* Thus, contrary to plaintiff's assertion, the ALJ fully considered plaintiff's left-side impairments.

Each of these doctors indicated plaintiff is capable of significantly less than her assigned RFC indicates. Reviewing the medical record, however, the ALJ's decision to discount these two opinions is supported by substantial evidence. As noted above, Dr. Marshall failed to cite a single laboratory or diagnostic test on which he based his medical opinion of plaintiff's impairments. *Id.* at 236. Moreover, contrary to plaintiff's claim that the opinions of these two doctors are uncontradicted, other evidence in the record contradicts their findings.[6]

The medical opinion of Dr. Douglas Kondziolka found plaintiff limited from straining, lifting greater than 10 pounds and driving after her surgery in 1995. *Id.* at 217. The medical opinion of Dr. Dilks found that plaintiff significantly overstated her pathology possibly for secondary gain. *Id.* at 181-84. Dr. Dilks found that plaintiff was psychologically capable of gainful employment. *Id.* at 183. Dr. Tarrand opined that the limiting effects of plaintiff's symptoms were not entirely credible and that they did not prevent plaintiff from all work. *Id.* at 23-24.

As noted by the ALJ, plaintiff's own "full range of daily activities" also contradicts the significant limitations she claims. Plaintiff reported that she handles personal needs, drives, shops, cooks, cleans, and watches television. As the ALJ observed, "performance of a wide range of daily activities militates against the claimant's credibility." *Id.* at 25; *see Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990).

---

[6] Plaintiff argues that, "[a]t the very least, the ALJ should have recontacted the treating physicians for clarification of their opinions." According to 20 C.F.R. 416.912(e), the ALJ will recontact medical sources only where the evidence in the record is inadequate to make a disability determination. In the instant case, however, the ALJ had an extensive medical record from which to make the determination, thus he was not required to recontact any physician. Moreover, plaintiff has not shown that a failure on the part of the ALJ to procure further information created an incomplete medical history or might have led to a different conclusion by the ALJ. *See Newton v. Apfel*, 209 F.3d 448, 457-58 (5th Cir. 2000) (noting that reversal on the basis of a failure to procure more information requires a showing of prejudice, such as reliance on an incomplete record, the supplementation of which would have led to a different result).

"Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, 'the ALJ has sole responsibility for determining a claimant's disability status.' *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990)). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Id*. (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). "Recognized 'good cause' [reasons for giving less, little, or no weight to a treating physician's testimony] include 'disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.'" *Perez*, 415 F.3d at 465 (quoting *Greenspan*, 38 F.3d at 237). It is evident that the ALJ determined plaintiff's RFC based on the record as a whole. Although conflicts in the evidence exist, it is not the court's province to resolve those conflicts. *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## CONCLUSION

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's determination be AFFIRMED and that plaintiff's Complaint be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED**

**PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on this 9th day of March, 2009.

KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE